THE CITY OF CHICAGO, Defendant in Error, *vs.* THE UNION ICE CREAM MANUFACTURING COMPANY, Plaintiff in Error.

*Opinion filed December 21, 1911.*

1. MUNICIPAL CORPORATIONS—*ordinances must not be in conflict with general laws of the State.* Municipal ordinances must be in harmony with the general laws of the State and in case of a conflict the ordinance must give way, but the mere fact that the State has legislated upon a subject does not necessarily deprive a city of power to deal with the subject by ordinance.

2. SAME—*Pure Food law did not deprive cities of police power over sale of adulterated foods.* The passage of the Pure Food law of 1907 did not deprive cities and villages of the power given by the provisions of article 5 of the Cities and Villages act to regulate the sale of impure or adulterated food by ordinances not inconsistent with such statute, and the fact that an ordinance attaches a less penalty than the statute does not amount to such a repugnancy between the two as invalidates the ordinance.

3. SAME—*police regulations of a city may differ from those of State.* Police regulations enacted by a city under a general grant of power may differ from those of the State upon the same subject, provided they are not inconsistent therewith.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. JUDSON F. GOING, Judge, presiding.

McMAHON & CHENEY, for plaintiff in error.

WILLIAM H. SEXTON, Corporation Counsel, and JAMES S. McINERNEY, Prosecuting Attorney, (EDWIN J. RABER, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This is a quasi-criminal action instituted by the city of Chicago against the Union Ice Cream Manufacturing Company, a corporation, to recover a fine for the violation of section 1160 of the municipal code of Chicago of 1905, which reads, in part, as follows: "Any person or corporation, or any agent or employee thereof, who shall keep for sale, offer for sale or exchange, or shall sell or deliver or expose for sale, any * * * food which shall be impure, unwholesome, adulterated, or to which any harmful or injurious foreign substance has been added, shall be fined not less than $5 nor more than $100 for each offense." On a hearing before the court the plaintiff in error was found guilty and fined $100 and costs. This writ of error is based on a certificate of the trial court that the validity of a municipal ordinance was involved and the public interests required the case to be taken direct to this court.

The sole question involved here is whether the above section of the municipal code is in force since the so-called Pure Food act went into force, July 1, 1907. (Hurd's Stat. 1909, p. 2118.)

It is first insisted by counsel for plaintiff in error that the Pure Food act, being the latest announcement of the legislature, repeals, by implication, all laws and parts of laws repugnant to its provisions. If we understand the argument, it is to the effect that while article 5 of the City and Village act of 1872 formerly gave the city council of Chicago authority to pass such an ordinance as here in question, under the general power therein conferred to regulate the sale of provisions, pass police ordinances and

do all acts necessary and expedient for the promotion of public health, yet the legislature clearly, under our system of government, may resume the power so delegated and in that way deprive the municipalities of the right to exercise it; (*City of Chicago* v. *Burke,* 226 Ill. 191, and cases cited;) that the Pure Food law of 1907, covering the same subject, manifestly was intended to repeal, by implication, the authority granted to cities by said act of 1872 to regulate the sale of impure or adulterated food. Whatever force there may be in that argument as presented here, it is nullified by the fact that said article 5 of the City and Village act was amended and entirely re-enacted by the legislature as an emergency act December 31, 1907, (Laws of 1907-8, Adj. Sess. p. 36,) so that the part of the City and Village act as it stands at present on the statute book, authorizing cities and villages to make regulations for the promotion of health or suppression of disease, became a law six months after said Pure Food act.

The laws of the State operate within the limits of municipal corporations the same as elsewhere, unless otherwise clearly provided by municipal charters or statute. Local laws and regulations are at all times subject to the paramount authority of the legislature. Did the legislature intend by the passage of the Pure Food act, in 1907, to deprive municipal authorities of all power to legislate on subjects touched upon or regulated by said act? Clearly not. Said act has certain provisions with reference to milk and its measurement, but this court has held since its passage that a municipality could regulate by ordinance the size of the bottles or jars in which milk was sold. (*City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294.) There are also many provisions in said Pure Food act with reference to food. We recently held that a municipality could pass an ordinance regulating the sale and weight of bread. (*City of Chicago* v. *Schmidinger,* 243 Ill. 167.) The Pure Food act also has regulations with reference to liquors, but no

one would claim that municipalities are deprived, since the passage of that act, of any of their former authority to regulate and control the sale of intoxicating liquors. See *Gardner* v. *People,* 20 Ill. 431; *City of Pekin* v. *Smelzel,* 21 id. 464; *Fant* v. *People,* 45 id. 259.

We think it is clear that the Pure Food act was not intended to deprive cities and villages of the authority given by the provisions of article 5 of the City and Village act to regulate and control, by ordinances not in conflict with said Pure Food law, the sale of foods, including such regulation as provided in said section 1160 of the revised municipal code of Chicago. Municipal ordinances must be in harmony with the general laws of the State and with the municipal charter. In case of a conflict the ordinance must give way. The great weight of authority is to the effect that the legislature may confer police power upon a municipality over subjects within the provisions of existing State laws. An act may be a penal offense under the laws of the State, and further penalties, under proper legislative authority, may be imposed for its commission by municipal ordinances. The enforcement of one would not preclude the enforcement of the other. (Cooley's Const. Lim.— 6th ed.—239; 2 Dillon on Mun. Corp.—5th ed.—sec. 633; 28 Cyc. 696, 698; 2 McQuillin on Mun. Corp.—1911 ed.— sec. 888; Ingersoll on Public Corp. sec. 119; *Jones* v. *City of Atlanta,* 4 A. & E. Ann. Cas. (Ga.) 2, and note; *Seattle* v. *MacDonald,* 17 L. R. A. (N. S.) 49, and note.) Municipal corporations are bodies politic, vested with many political and legislative powers for local government and police regulations, established to aid the government by the State. The necessity for their organization may be found in the density of the population and the conditions incidental thereto. Because of this, the municipal government should have power to make further and more definite regulations than are usually provided by general legislation and to enforce them by appropriate penalties. (2 Dillon

on Mun. Corp.—5th ed.—sec. 632; *Territory* v. *McCandless*, 13 A. & E. Ann. Cas. 795, and note.)   This court, in *Wragg* v. *Penn Township*, 94 Ill. 11, after reviewing the authorities on this subject at length, (quoting from the Federal decisions to the effect that the same act could be an offense against both the Federal and the State governments, and that a party might be convicted for violating both statutes without being twice put in jeopardy for the same offense,) held that the legislature had the power to make an act punishable one way under the general State laws and punishable in a different way by the authorized ordinances of a municipal corporation.   See, also, *Robbins* v. *People*, 95 Ill. 175; *Baldwin* v. *Murphy*, 82 id. 485; *Seibold* v. *People*, 86 id. 33; *Hankins* v. *People*, 106 id. 628.

Municipal authorities cannot, under a general grant of power, such as article 5 of the City and Village act, adopt ordinances which infringe the spirit of a State law or are repugnant to the policy of the State as declared by general legislation, but the police regulations of a municipality may differ from those of the State upon the same subject, if they are not inconsistent therewith.   (*McPherson* v. *Village of Chebanse*, 114 Ill. 46.)   This ordinance does not prohibit what the statute permits.   While the ordinance attaches a less penalty for its violation than does the statute, we find no repugnancy between them.   The general policy under both is the same.

The conclusion that the ordinance in question is not in conflict with the Pure Food act is supported by the great weight of authority and is in harmony with sound public policy.

The judgment of the municipal court will be affirmed.

*Judgment affirmed.*