**FIELDCREST DAIRIES, Inc., v. CITY OF CHICAGO et al.**

No. 7502.

Circuit Court of Appeals, Seventh Circuit.

Aug. 4, 1941.

Writ of Certiorari Granted Nov. 24, 1941.

See —— U.S. ——, 62 S.Ct. 301, 86 L.Ed. ——.

LINDLEY, District Judge, dissenting in part.

See, also, 27 F.Supp. 258.

Barnet Hodes, Alexander J. Resa, J. Herzl Segal, L. Louis Karton, and James A. Velde, all of Chicago, Ill., for appellants.

Fred A. Gariepy, Owen Rall, and John Spalding, all of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal is from a declaratory judgment decree in favor of plaintiff and awarding an injunction against defendants, entered October 23, 1940. The suit

was commenced by a bill of complaint, filed February 2, 1939, which sought a judicial declaration that a milk ordinance of the City of Chicago, requiring milk to be delivered in "standard milk bottles," did not prohibit the sale of milk in plaintiff's paper containers, or that, if it does, the ordinance is invalid. An injunction was also sought restraining the defendants from interfering with the sale of milk in such containers. A hearing was had before a master who recommended a denial of the relief sought. The court sustained objections to the master's report and entered the decree in controversy.

Thus, the issues for decision are: (1) Does the ordinance forbid the delivery of milk in plaintiff's paper containers, and (2) if so, is the ordinance valid. Under the latter issue it is contended that any power which the City Council of the City of Chicago might have had to prohibit the sale of milk in such containers was withdrawn by an Act of the Illinois Legislature enacted in 1939, and, irrespective of this, that the ordinance was and is so unreasonable and arbitrary, both as a matter of law and fact, as to make it invalid.

The Master decided all issues in favor of the defendants, while the court concluded that plaintiff's container was a standard milk bottle within the meaning of the ordinance, and further concluded that any other construction of the ordinance would render it void.

Before discussing the merits of the issues presented, it is appropriate to state that the master made a number of purported findings of fact which, in part at least, were not accepted by the court. The defendants contend that the court was obligated under Rule 53(e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to accept such findings "unless clearly erroneous." We think it is unnecessary to discuss to what extent, if any, this rule should be given application for the reasons: (1) The purported findings are in the nature of conclusions rather than findings of fact, and (2) for the more important reason that we have reached the conclusion that the cause should be disposed of on a legal rather than factual basis.

On January 4, 1935, there was enacted by the City Council of the City of Chicago, an ordinance regulating the production and distribution of milk in the city. Shortly thereafter there was promulgated by the Chicago Board of Health, regulations in conformity therewith. The provision of the ordinance now under attack is the third sentence of Section 3094: "Any milk or milk products sold in quantities of less than one gallon shall be delivered in standard milk bottles; provided, however, that nothing herein contained shall be construed to prohibit hotels, soda fountains, restaurants, and similar establishments from dispensing milk or milk products from sanitary dispensers approved by the board of health."

Prior to the institution of suit, plaintiff repeatedly sought from the Chicago Board of Health a permit to retail milk in the city which was denied on the ground that the container in which plaintiff proposed to deliver its milk was not a "standard milk bottle" within the meaning of the ordinance. Thus, the first issue in dispute revolves solely around the interpretation of those words as used in the ordinance. It is the contention of the plaintiff, sustained by the lower court, that such words should be construed to include its paper container, while the defendants contend that they should be construed to include glass bottles only.

Any detailed description of plaintiff's business, or the process employed in the manufacture of plaintiff's container appears irrelevant to a construction of the ordinance. At this point, therefore, we make only a brief reference to the same. Plaintiff, a wholly-owned subsidiary of the Dean Milk Company, a corporation, is engaged in the distribution of milk and milk products. Its plant is located at Chemung, McHenry County, Illinois, where it has two machines leased from the Ex-Cell-O Corporation, used for packaging milk in paper containers bearing the trade name "Pure-Pak." Its facilities are such that it is unable to use glass bottles. Its container is manufactured from paper obtained from a mill in West Virginia. The paper is cut, trimmed and printed at a manufacturing plant located in Ohio. The product is shipped to plaintiff's plant and assembled into the type of containers now in controversy. Such containers are commonly and, we think, generally referred to by Governmental officials and those interested in the trade as "Single Service Containers." This follows from the fact that they are destroyed after a single use. Thus they

are distinguished from a multi-container, such as a glass bottle, which may be used many times. The court adopted the master's description of plaintiff's container: "Plaintiff's container is a prismatic box about 6½ inches high and 4½ inches wide, with a gable top, made of paper and paraffined on the inside and outside. In the middle of one of the slanting surfaces of the gable top is a so-called pouring lip which is about an inch square and which is pulled out like an ear when milk is poured out of the container." 35 F.Supp. 451, 453.

The court, in construing the words "standard milk bottle" as including plaintiff's container, relied strongly upon two factors: (1) The situation existing in the trade at the time of trial rather than at the time the ordinance was enacted, and (2) the definition of the word "bottle" as given by numerous lexicographers. As to the first factor, the court said: " * * * The ordinance is not static. The words are general and continuing in their operation. The ordinance must be construed in the light of new and changing conditions and current thought and practice. If, in the course of time, the advancement of science has produced a container which serves the same purpose as a glass container, and if the product delivered therein conforms to the requirements of sanitation prescribed by the health ordinances, then the ordinance must be given such construction as to permit the use of the later developed scientific container."

We are of the view that this was an unsound basis upon which to predicate a construction of the ordinance. As was said in Sup v. Cervenka, 331 Ill. 459, 462, 163 N.E. 396, 398: " * * * The courts have no legislative powers, and in the interpretation and construction of statutes their sole function is to determine, and within the constitutional limits of the legislative power to give effect to, the intention of the Legislature. * * *"

And in United States v. Goldenberg, 168 U.S. 95, 102, 18 S.Ct. 3, 4, 42 L.Ed. 394: "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator. * * * No mere omission, no mere fail-ure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute. * * *"

In United States v. First National Bank, 234 U.S. 245, on page 259, 34 S.Ct. 846, on page 850, 58 L.Ed. 1298, referring to facts subsequent to the enactment as bearing upon its construction, the court said: " * * * But these after facts can have little weight in determining the meaning of the legislation, and certainly cannot overcome the meaning of plain words used in legislative enactments. * * *"

That the language of a legislative enactment is to be construed in accordance with its meaning at the time used rather than by a meaning afterwards acquired was held in People v. Barnett, 319 Ill. 403, 150 N.E. 290. On page 408 of 319 Ill., on page 292 of 150 N.E., the court said:

" * * * The true rule is that statutes are to be construed as they were intended to be understood when they were passed. Statutes are to be read in the light of attendant conditions and that state of the law existent at the time of their enactment. The words of a statute must be taken in the sense in which they were understood at the time the statute was enacted. * * *

"The legislative intent that controls in the construction of the statute has reference to the Legislature which passed the given act. * * * In interpreting a statute, the question is what the words used therein meant to those using them. * * *"

A municipal ordinance is to be tested in the same manner as a state statute. Pacific States Company v. White, 296 U.S. 176, 186, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; People v. Chicago Rys. Co., 270 Ill. 87, 105, 110 N.E. 386, Ann. Cas.1917B, 821. Thus the theory of construction advanced by the plaintiff, apparently followed by the District Court, to the effect that the words "standard milk bottle" should be interpreted in accordance with the meaning of those words at the time of trial rather than their meaning at the time the ordinance was enacted, is not tenable. The recognition of such a theory would, in effect, impose legislative functions upon the courts. It would mean that a legislative enactment might mean one thing today and something else tomorrow. Changed conditions,

of course, may make advisable a repeal or modification of existing legislation, but if so, the appeal should be to the legislature and not the courts.

We therefore must consider the language employed by the City Council in the enactment of the ordinance in the light of conditions as they existed at that time. The record discloses that the glass milk bottle, similar to those in general use at that time, was invented in 1884, and that for many decades milk in less than gallon quantities had been delivered in the City of Chicago in such bottles. Their general appearance, size and shape have been substantially the same for a half century. On the other hand, the use of paper containers was scarcely known when the ordinance was enacted. True, their development began about 1928, but they first came into general use in the Eastern states about 1938. Since that time their use has rapidly increased in all parts of the country, including the area adjacent to the City of Chicago.

Plaintiff argues that under such circumstances it could not have been the intent of the City Council in 1935, to exclude the use of paper containers. It is possible and, we think, likely that this is correct. The question, however, is what it intended to permit rather than what it intended to exclude. To us it is readily apparent that what the City Council did mean and intend by use of the words "standard milk bottle" was the glass bottle at that time in universal use. The language employed in the ordinance itself lends support to this view. We have quoted heretofore that portion of the ordinance directly involved in this controversy and it is pertinent to point out that in other portions of the ordinance the word "containers" is employed. For instance, in referring to quarantine premises, the ordinance states: "No milk bottle or other containers may be taken out of or away * * *." There was no occasion to use the words "other containers" if they were included in the words "milk bottles." The use of the words "milk bottle or other containers" is inconsistent with an intent that the latter was included in the former. The omission of the latter from the provision in controversy is therefore significant.

That a standard milk bottle has generally been recognized as not including a paper container or a single service container is well near conclusively demonstrated by the record. A number of witnesses who testified for the plaintiff recognized the distinction. In the same year the ordinance was passed, the United States Biennial Census of Manufacturers was taken, in which glass products were divided into three classifications, one of which was glass containers, and milk bottles were listed as one of the classes of glass containers. Under date of January 13, 1936, the Dean Milk Company (of which the plaintiff is the wholly-owned subsidiary) wrote the Board of Health that they would like to present the facts about "delivering milk to the City of Chicago in paper containers instead of bottles." Certainly there was no thought at that time that milk bottles included paper containers. The United States Public Health Service construed "standard milk bottle" to exclude paper containers. In June, 1939, its model ordinance was amended by adding "or in single service containers" after "standard milk bottles." If the latter included the former, there was, of course, no occasion for the amendment. On August 2, 1938, the sales manager of the manufacturer of the machines used by the plaintiff for filling the containers, in a letter to the Board, referring to the ordinance, stated: "True, its fundamental principles were written a good many years ago, and would not include the present, more sanitary milk receptacle—because it was then unknown."

The court, after quoting numerous lexicographers as to the definition of the word "bottle," stated: " * * * While, in modern times, bottles have usually been made of glass, yet of the material out of which bottles have been made may be mentioned, besides glass and skins, hard stone, wood, ivory, bone, porcelain, glazed pottery and common earthenware. In fact, a bottle is not characterized by the material out of which it is made. * * *"

This reasoning, in our judgment, overlooks the fact that the language employed must be interpreted according to its usual and ordinary meaning. It could not be logically contended that the "standard milk bottle" referred to in the ordinance included a bottle made of skins, stone, wood, bone, or the numerous other articles out of which bottles, according to the lexicographers, have sometimes been made. We are not to search for that which possibly could have been included in the

language employed, but must ascertain what was intended under the existing circumstances and conditions. Whatever meaning the word "bottle" might have had in ancient times, there can be no question in our mind but that in modern times it has generally been recognized as made of glass, and this has been the universal meaning as applied to a milk bottle.

The master found the words "standard milk bottle" specified in the ordinance to be: "A glass bottle of the type, shape and proportions well known to the trade and the community in Chicago as having been used for many years for the delivery of milk at retail."

It is our judgment that the master's conclusion in this respect was correct. It follows that the use of plaintiff's paper containers for the delivery of milk in the City of Chicago was prohibited by the ordinance.

We now consider the attack made upon the validity of the ordinance. While we have construed the ordinance in the light of the situation existing at the time of its passage, a different test is permitted and, in fact, required in determining its validity at the time of trial. As was said in Chastleton Corp. v. Sinclair, 264 U.S. 543, 547, 44 S.Ct. 405, 406, 68 L.Ed. 841: " * * * A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed. Perrin v. United States, 232 U.S. 478, 486, 487, 34 S.Ct. 387, 58 L.Ed. 691. Missouri v. Chicago, Burlington & Quincy R. R. Co., 241 U.S. 533, 539, 540, 36 S.Ct. 715, 60 L.Ed. 1148. In Newton v. Consolidated Gas Co., 258 U.S. 165, 42 S.Ct. 264, 66 L.Ed. 538, a statutory rate that had been sustained for earlier years in Willcox v. Consolidated Gas Co., 212 U.S. 19, 29 S.Ct. 192, 53 L. Ed. 382, 48 L.R.A. (N.S.) 1134, 15 Ann. Cas. 1034, was held confiscatory for 1918 and 1919."

This rule was recognized in Perrin v. United States, 232 U.S. 478, 487, 34 S. Ct. 387, 391, 58 L.Ed. 691: " * * * The fact that the conditions may become so changed in the future as to render the prohibition inoperative affords no reason for condemning it now. * * *"

Moreover, where the public policy of a state has been declared in the interim between the judgment of the lower court and appeal here, we are bound to give recognition to such policy. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327. Under this view we need not consider or decide the validity of the ordinance at the time of its enactment. The question for consideration is whether the ordinance now contravenes the public policy of the State of Illinois, and whether so or not, was the situation at the time of the institution of suit so altered as to make the prohibition contained in the ordinance unreasonable and void. On these questions, as well as others, the master found in favor of the defendants. In deciding to the contrary, the court, as already pointed out, placed its chief reliance upon a construction of the ordinance as including plaintiff's paper container. The court also held: "Any other construction would render the ordinance void. Moreover, the court is of opinion that under the recent statute of Illinois, heretofore referred to, the city is without power to prohibit the use of single service containers if such containers conform with the provisions of the statute."

The Illinois Legislature on July 24, 1939, during the pendency of this suit, enacted legislation (Illinois R.S.1939, Ch. 56½ Foods, Pars. 115–134) which plaintiff contends established a policy for the state concerning the manufacture and distribution of pasteurized milk, including its distribution in single service containers. The statute is lengthy and there seems no occasion to set it forth verbatim. It is sufficient to point out that it provides for the issuance of a Certificate of Approval to a pasteurization plant whose methods of operation comply with the numerous requirements of the act. It also requires compliance "in accordance with minimum requirements adopted by the Director for interpretation and enforcement of this Act." (The act defines "Director" as meaning the Director of the Department of Public Health.) Item 10 of Sec. 15 provides in part: " * * * Single service containers, caps, gaskets and similar articles shall be manufactured and transported in a sanitary manner."

Item 18 of the same section provides: "Bottling or packaging of milk and milk products shall be done at the place of pasteurization by approved mechanical equipment."

Pursuant to the power conferred by the act, the Director of the Illinois Depart-

ment of Public Health has promulgated "minimum requirements" for interpretation and enforcement of the act. Among other things required are that single service containers shall be manufactured and handled in accordance with the requirements of the Department. The character of the buildings and rooms in which such containers are manufactured, packed, stored and handled, is prescribed. The average maximum bacterial count of the stock from which such containers are made is stated, and it is required that all operations in the fabrication plant, and during their transportation, shall be conducted so as to reduce to a minimum the possibility of contaminating such articles. It is required that all single service containers "shall be so treated as to be as impervious to milk and milk products as practicable."

There is no room for doubt but that the State, by this act, as well as by the regulations promulgated pursuant thereto, has undertaken to regulate the pasteurization of milk, as well as its sale and distribution. It is equally plain that the use of single service containers such as used by the plaintiff for the distribution of milk is permitted and approved upon compliance with the act.

The authorities are uniform that any ordinance which conflicts with any statute or public policy adopted by the State Legislature is invalid. The rule is aptly stated in 2 McQuillin on Municipal Corporations, 572: "A Municipal corporation cannot, without special authority, prohibit what the policy of a general statute permits. Nor, on the other hand, can an ordinance permit that which the State's policy forbids. Consequently under a general grant of power, a municipal corporation cannot adopt ordinances 'which infringe the spirit, or are repugnant to the policy, of the state as declared in its legislation.' It thus follows that if the state has expressed through legislation a public policy with reference to a subject, a municipality cannot ordain in respect to that subject to an effect contrary to, or in qualification of the public policy so established. * * *"

Such rule has been recognized by the Illinois courts. City of Chicago v. Union Ice Cream Mfg. Co., 252 Ill. 311, 315, 96 N.E. 872, Ann.Cas.1912D, 675; City of Chicago v. Drogasawacz, 256 Ill. 34, 37, 99 N.E. 869; City of Marengo v. Rowland, 263 Ill. 531, 534, 105 N.E. 285, 286. In the Marengo case the court said: "* * * Municipal authorities, under general grant of power, cannot adopt ordinances which infringe the spirit of a state law or are repugnant to the general policy of the state. * * *"

It is also well established that the General Assembly may resume at any time the power previously delegated to a municipality. Wilkie v. City of Chicago, 188 Ill. 444, 452, 58 N.E. 1004, 80 Am.St.Rep. 182.

Thus, we are confronted with a situation wherein the State on the one hand has expressly recognized and made provision for the use of a single service container for the sale and distribution of milk upon compliance with the requirements of the act, and regulations lawfully promulgated in conformity therewith, and on the other hand, with the provision of the City Ordinance which prohibits such use. Plaintiff has complied with the State requirements and has been issued a Certificate of Approval. By this token it has been authorized by the state to sell and distribute its product within the confines of Illinois in single service containers. The City of Chicago, however, by the prohibition contained in its ordinance, denies to plaintiff this right conferred by the State.

The defendants, however, in defense of this apparent repugnancy, rely upon Sec. 19 of the 1939 Act, which reads: "Nothing in this act shall impair or abridge the power of any city, village or incorporated town to regulate the handling, processing, labeling, sale or distribution of pasteurized milk and pasteurized milk products, provided that such regulation [does] not permit any person to violate any of the provisions of this Act."

The title of the 1939 Act is: "An Act regulating the handling, processing, labeling, sale and distribution of pasteurized milk and pasteurized milk products."

Thus it will be noted that the language of the saving clause reserves to the city the right to regulate the same matters described in the title of the act.

It is contended by the defendants that by this saving clause, the city retains unimpaired the broad field of regulation which it theretofore had as recognized in Koy v. City of Chicago, 263 Ill. 122, 104 N.E. 1104, Ann.Cas.1915C, 67, and City of Chicago v. Bowman Dairy Co., 234 Ill. 294, 84 N.E. 913, 17 L.R.A.,N.S., 684, 123 Am.St.Rep. 100, 14 Ann.Cas. 700. It is claimed that there is only one limitation in the saving clause and that is the proviso that the city

shall "not permit any person to violate any of the provisions of this Act." Frankly, we are unable to conceive the purpose of these words. Certainly the city is without authority to permit the violation of the statute under discussion, or any other. The prohibition in this respect is meaningless. We think the words must be regarded as surplusage.

Furthermore, we are of the opinion that the purpose of the saving clause was not as broad as claimed by the defendants, notwithstanding that its language furnishes some support for such contention. The courts of Illinois have frequently recognized that power exercised by municipalities may be conferred or withdrawn by implication. Village of Atwood v. Cincinnati, Indianapolis & W. R. Co., 316 Ill. 425, 147 N.E. 449; Stowell v. Prentiss, 323 Ill. 309, 319, 154 N.E. 120, 50 A.L.R. 584.

It therefore appears reasonable that the sole purpose of the saving clause was to prevent a construction by implication, withdrawing the vast authority which the city had theretofore had over the milk industry. The ordinance of the City of Chicago and regulations of its Board of Health disclose scores of ways and means by which the industry is regulated, extending from the health of the cow producing the milk, to its delivery at the home of the consumer. The purpose of the saving clause, in our judgment, was to preserve in the city the unquestioned right to continue in a field which had been entered by the state, and in which, thereafter, each should have co-extensive power and authority. The defendants' contention, if sustained, would give the city a power broader than that provided by the Legislature for the state. It would make the state subservient to the city. It would impute to the Legislature the purpose of withdrawing the power theretofore exercised by the city and by the saving clause reconferring such power. We are unable to believe that such an incongruous result was intended. As was said in Elsenau v. City of Chicago, 334 Ill. 78, 81, 165 N.E. 129, 130: "* * * A statute which grants powers to a municipal corporation is strictly construed, and any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it. * * *"

Neither do we agree with the defendants' argument that the prohibition of plaintiff's single service container is a mere regulation. It is true that all regulations are prohibitory in nature to those who are unable to comply therewith, and that the prohibition of plaintiff's container may be considered a regulation as it pertains to the sale and distribution of milk. However that may be, the state, upon entering the field not only made provision for the sale and distribution of pasteurized milk, but recognized, permitted and approved the use of such containers, and the ordinance is squarely in conflict therewith. That the city, by virtue of the saving clause, has the power to regulate paper containers, we have no doubt, but we are unable to accept the theory that it has authority to outlaw that which the state has legalized. We therefore are of the opinion that the portion of the ordinance prohibiting plaintiff from distributing milk in single service containers is contrary to the public policy of the state, and void.

Having thus concluded, we find no occasion to discuss at length or decide other controverted questions as to the validity of the ordinance. We are not unmindful of the broad power possessed by a legislative body, of the strong presumption of legality attaching to their acts, and that it is not within the province of a court to substitute its judgment for theirs as announced in the many cases cited and relied upon by the defendants. Such authorities, however, have no application in view of what we have decided. Moreover, it appears that the presumption in favor of validity could be little more than a shadow in the instant matter for the reason that the use of single service containers was in its incipient stage when the ordinance was enacted, and the legislative body could not, from the nature of things, have considered and weighed their advantages and disadvantages.

It is true the record discloses some evidence in support of defendants' contention that the use of such containers presents a hazard to health. Such evidence, however, carries little, if any, conviction when considered in connection with the fact that the United States Public Health Service, whose model ordinance has been widely adopted by cities throughout the United States, including the City of Chicago, amended its ordinance in 1939, so as to include the regulation of single service containers, and that such amendment was subsequently proposed to the Council of the City of Chicago by its Board of Health; that the Legislature of the State of Illinois and its

Department of Health have approved the use of such containers since 1939, and that their use has been authorized and permitted by more than 200 cities and villages in the United States, including such cities as Washington, D. C., New York and Philadelphia, as well as practically all of the cities and villages near and adjacent to the City of Chicago.

From what we have decided, it follows plaintiff was entitled to a declaratory judgment that the ordinance prohibiting the use of its Pure-Pak Single Service Container was void. It also follows that plaintiff was entitled to an injunction restraining the defendants from prohibiting, but not from regulating, the use of such containers. The cause is therefore reversed and remanded for the sole purpose of modifying the decree so as to conform with the views herein expressed.

LINDLEY, District Judge (dissenting in part).

I regret that I am unable to agree that the ordinance violates the public policy of Illinois as expressed in Illinois Revised Statutes 1939, Chap. 56½, Section 115–134.

Under Koy v. City of Chicago, 263 Ill. 122, 104 N.E. 1104, Ann.Cas.1915C, 67, the authority of Illinois cities to regulate the sale and distribution of milk includes power to declare the means by which purity, wholesomeness and freedom from disease shall be secured; to require milk containers to be of prescribed character and to protect the public generally in the sale and distribution of milk. This municipal authority, thus defined by the Supreme Court, is still lodged in the city unless there is something in the statute mentioned which has expressly or impliedly withdrawn it.

The statute does not direct the use of paper milk bottles. It inferentially recognizes that single service containers of some character will be employed but there is no provision that cities must permit them to be used. The whole effect of the enactment is that if "single-service" containers are used they shall conform to certain minimum requirements to be prescribed by the Illinois Department of Public Health. To my mind this legislation did not take from the city power to determine whether paper milk bottles were reasonably possibly dangerous to health and therefore should not be used. Indeed, the legislature apparently recognized the retained police power of the city in the provision that nothing in the act "shall impair or abridge the power of any city * * * to regulate the handling * * * [and] sale * * * of pasteurized milk." This language, it seems to me, was not meaningless or surplusage, as announced in the majority opinion, but rather in the nature of a declaratory clause maintaining the existing status, inserted by the legislature in an abundance of caution, to assure municipalities that their power to act in the premises was not taken away, provided their ordinances should not in any way conflict with the provisions of the statute.

To my mind this is far removed from those cases where the legislature has entered the field and by its action taken over all the police power upon any specific subject, such as confronted the court in Northern Trust Company v. Chicago Rys. Co., 318 Ill. 402, 149 N.E. 422 and City of Chicago v. Jensen, 331 Ill. 129, 162 N.E. 115. In case of such complete occupation of the range there is no area left in which the city may legitimately operate. Here the state has apparently left to the city the right to determine whether paper milk bottles shall or shall not be used. The language of City of Chicago v. Union Ice Cream Co., 252 Ill. 311, 96 N.E. 872, Ann.Cas.1912D, 675, is pertinent.

The master found upon substantial evidence a number of facts bearing upon the undesirability of use of paper milk bottles, showing clearly that at least the question of desirability of their use is debatable. In such case the city council is entitled to exercise its own administrative and legislative judgment,—a judgment not to be superseded by verdict of a jury or decision of a court. Carolene Products Co. v. Evaporated Milk Ass'n, 7 Cir., 93 F.2d 202; United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778; 82 L.Ed. 1234; United States v. Morgan, 61 S.Ct. 999, 85 L.Ed. 1429. See annotation 119 A.L.R. 243.

I think the ordinance should be sustained.