GUSTAVE E. KOY, Appellant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed April 23, 1914.*

1. MUNICIPAL CORPORATIONS—*power to pass ordinances must be reasonably exercised.* Where the legislature has authorized a city council to pass ordinances upon any subject the power thus conferred must be reasonably exercised, and whether its exercise in a particular case is reasonable is a judicial question.

2. SAME—*city has power to regulate sale of milk.* Clauses 50, 53, 66 and 78 of section 1 of article 5 of the Cities and Villages act clearly confer upon city councils the power to regulate the sale of milk and its products, and such power is essential to the preservation of the public health.

3. SAME—*city may prescribe conditions under which pasteurization may be done.* A city has power to require the pasteurization of milk, and is not limited to the imposition of a penalty for a violation of such requirement but may prescribe the conditions under which the pasteurization shall be done and how compliance with such conditions shall be secured and be made to appear.

4. SAME—*what does not render provision of an ordinance unreasonable.* A provision of an ordinance requiring a recording apparatus to be installed on all milk pasteurizers, to record the temperature of the milk during the operation, will not be held unreasonable upon the grounds that such apparatus is expensive, unreliable, capable of being tampered with and of no benefit to the

milk dealer, as such questions are matters resting in the discretion of the city council.

5. SAME—*paragraph (i) of article "B" of Chicago milk ordinance is not invalid.* Paragraph (*i*) of article "B" of the Chicago milk ordinance, requiring recording apparatus on milk pasteurizers, is not invalid for unreasonableness, nor as compelling milk dealers, in effect, to pay for deputy health inspectors of the city for the purpose of detecting violations of the ordinance. (*City of Chicago v. Weber,* 246 Ill. 304, distinguished.)

· 6. SAME—*police power authorizes prohibition of things hurtful to health.* The legislature, and city councils in the exercise of police power, may prohibit all things hurtful to the health and safety of society, even though the prohibition invades the right of liberty or property of an individual.

7. SAME—*when courts cannot interfere with health measure of city.* Court cannot overrule the determination of a city council that a particular method of protecting the public health shall be adopted, unless it is so clearly and manifestly wrong that there can be no doubt about it.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

· ROBERT S. COOK, P. H. O'DONNELL, and EDWARD J. KELLEY, for appellant.

WILLIAM H. SEXTON, Corporation Counsel, (GEORGE L. REKER, and MAX M. KORSHAK, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Gustave E. Koy filed a bill in the circuit court of Cook county on November 28, 1913, in behalf of himself and of all other persons similarly situated, to restrain the city of Chicago and its officers from revoking licenses issued to him as a milk dealer and from interfering with the distribution of milk products by him and by others similarly situated, for failure to comply with certain provisions of sections 1273 and 1274 of the Chicago code of 1911, as they were amended by an ordinance of August 14, 1912. A prelimi-

nary injunction was ordered, but on motion of the defendants it was dissolved and a demurrer was sustained to the bill, which was dismissed for want of equity. The complainant has appealed to this court, the validity of an ordinance being involved and the court having certified that the public interest required that the appeal be brought to the Supreme Court.

The bill alleges that the complainant for ten years has conducted a milk business in the city of Chicago, and has furnished to a large number of citizens, and is now delivering, clean, pure, pasteurized milk, and has complied with all ordinances of the city of Chicago relative to purity and cleanliness; that on January 7, 1913, he obtained licenses to conduct his business and run six wagons; that the product handled by him is perishable, and the ordinance requires him to mark his product on the cap on the day on which the milk was pasteurized and dispose of the milk on the day following; that he complies with this requirement, and if he is prevented from disposing of his milk on the day following, as marked on the cap, he loses the entire product not sold, as the ordinance prohibits him from re-pasteurizing and re-capping, and that his daily loss would amount to $168; that it is necessary for him to deliver the milk product at an early hour each day; that there are other persons similarly situated in the business and they handle 135,000 gallons of milk each day, and if they are prevented from selling and delivering the same on the day following the pasteurization the product will become a total loss, amounting to $35,000 a day; that the total value of their business in the city is worth $500,000, and that there are more than twelve hundred persons engaged in the business, scattered over a territory of 191 square miles.

It is further alleged that on August 14, 1912, the city council of the city of Chicago passed an ordinance regulating the producing, handling and sale of pasteurized milk, which amended sections 1273 and 1274 of the Chicago code

of 1911. In accordance with paragraph (*h*) of article "B" of section 1273 the complainant installed and is operating a pasteurizer, and he has complied with the ordinance in regard to notifying the commissioner of health of such pasteurizer and has obtained a permit to operate the same. The milk used by him is obtained from farms which have been inspected by the commissioner of health, and it is such that ninety-nine per cent of the bacteria and all pathogenic bacteria are killed and the milk treated at the temperature required in paragraphs (*j*) and (*i*) of article "B" of the ordinance. In all pasteurization the product is heated to the temperature required by the ordinance and fixed by the commissioner of health, and in accordance with paragraph (*k*) of article "B" of the ordinance all milk is properly labeled on the cap of every package and on tags attached thereto and the day of the pasteurization is plainly marked thereon. In accordance with paragraph (*m*) the product is cooled at a temperature of forty-five degrees without being exposed to contamination. The apparatus used can be readily cleaned and sterilized, as required by the ordinance. The pasteurized product complies with the provisions of the ordinance and does not contain more bacteria per cubic centimeter than is within such provisions. The department of health has notified the complainant that it is going to enforce paragraph (*i*) of article "B" of the ordinance, which refers to pasteurization, and is as follows:

"All continuous pasteurizers shall be equipped with feeding pipe which is so constructed that the pasteurizer can not be fed in excess of its normal working capacity,—that is, in excess of the working capacity of the machine at which ninety-nine per cent of the bacteria are killed when the required amount of heat is applied. A recording apparatus shall be installed upon all pasteurizers, to record, during operation, the temperature of the pasteurized product as it flows from the heater. The thermometer of this recording apparatus must be accurate and kept submerged

in the milk in such a way that it is not exposed to escaping steam or other heat except the heated milk: *Provided,* that if the pasteurizing is done in bottles or in other final containers, the temperature recording apparatus must be attached and adjusted in a manner so as to accurately record the temperature to which the milk, cream, skim milk or buttermilk is raised and the duration of time for which said temperature is maintained. The records made by this recording thermometer must be accurate and made in a chamber which is kept under lock and key in the control of the commissioner of health. The mechanism of the pasteurizer or pasteurizing system shall be such that the three important elements, namely, the temperature, time of exposure and the quantity of milk exposed at one time, can be readily kept under control and observation by the commissioner of health."

It is further alleged that the recording apparatus required is of no benefit to the appellant, for the reason that he now has and uses thermometers and apparatus by which he can determine at what temperature his product is pasteurized and for what length of time the product so pasteurized is kept at that temperature and can comply with the requirements of the ordinance in regard to properly pasteurizing milk without the recording apparatus mentioned in the ordinance, and that the requirement of the ordinance in this respect is unreasonable and unjust and would require the expenditure of between $45 and $220 for useless apparatus which would not benefit the city or the health department in enforcing compliance with the ordinance. The bill further alleged that the ordinance is ambiguous and uncertain; that there is no device which will comply with the requirements of the ordinance; that the only devices on the market to meet the requirements are complicated and expensive and cost in the neighborhood of $65, the cheapest costing from $45 up; that on all flash pasteurizers an additional requirement of a controller would be necessary,

costing $185 for the cheapest, and that such devices have never been proved to be correct but have been proved to be incorrect. It is further alleged that all the devices offered for sale to meet the requirements of the ordinance are worthless and do not guarantee compliance with the ordinance because of defects in their construction or operation, which are described, and because of the ease with which they can be manipulated so as to show incorrect results; that none of these recording devices furnish reliable information as to compliance with the ordinance unless kept under lock and key, and that it would be impossible for the officers of the health department to visit the various places throughout the area of the city of Chicago where milk is pasteurized, between the time of one pasteurization and the next, and the ordinance could not be enforced without stationing an inspector in each place during the entire operation of pasteurization, and in such case there would be no necessity of having the recording devices.

Various technical objections to the bill of complaint as a pleading have been urged by the appellees in their brief which seem to be of considerable force, but since we have arrived at the conclusion that the decree is right upon the merits they will not be further mentioned. The bill is founded upon the proposition that the ordinance is unreasonable, unjust and oppressive and should therefore be held void. When the legislature has authorized a city council to pass ordinances upon any subject, the power thus conferred must be reasonably exercised. Whether its exercise in a particular case is reasonable is a judicial question, and an unreasonable ordinance will be held void by the courts. The regulation of the sale of milk and its products is essential to the preservation of the public health, and authority for its regulation is clearly given to the city council by paragraphs 50, 53, 66 and 78 of section 1 of article 5 of the Cities and Villages act. (*City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294; *City of Chicago* v. *Union Ice Cream Co.*

252 id. 311; *Gundling* v. *City of Chicago,* 176 id. 340.)
In fact, the appellant does not question the power of the
city to require the pasteurization of milk, but only the rea-
sonableness of requiring the use of the recording apparatus
mentioned in the portion of the ordinance which has been
set out. He alleges that he is furnishing clean, pure and
properly pasteurized milk, and that the requirements of the
ordinance are no more reasonable than would be a require-
ment that he should furnish equipment for the city labora-
tory or pay an inspector for ascertaining whether he was
complying with the ordinance.

It is argued that the apparatus is of no benefit to the
appellant because he has, and is using, thermometers and
apparatus by which he can comply with the requirements of
the ordinance in regard to properly pasteurizing milk at
the temperature and for the length of time required in the
ordinance without the use of the recording apparatus, and
that such apparatus has no effect upon the food product it-
self. The object of the ordinance is not to benefit persons
engaged in the milk business or to enable them to comply
with the ordinance in regard to pasteurizing milk, but is
to make sure that the milk offered for sale within the city
shall be of a quality which will not be detrimental to the
public health. The city having power to require milk to be
pasteurized is not limited to the imposition of a penalty for
a violation of this requirement, but may prescribe the con-
ditions under which the pasteurization shall be done in order
to prevent an evasion of the ordinance and insure that the
product shall be such as the ordinance requires. In *City
of Chicago* v. *Bowman Dairy Co. supra,* an ordinance was
held to be a valid exercise of the police power which re-
quired every glass bottle or jar in which milk or cream was
sold or offered for sale to have its capacity blown into it
or otherwise permanently and indelibly indicated on it, and
the fact that the effect of the ordinance was to deprive per-
sons of the use of their bottles on hand at the time the

ordinance was adopted did not render it invalid. In *City of Chicago* v. *Schmidinger,* 243 Ill. 167, an ordinance was sustained which fixed the weight of loaves of bread which might be offered for sale, required a label at least an inch square or an inch in diameter to be affixed in a conspicuous place to each loaf sold or offered for sale, having printed thereon the weight of the loaf and the name and address of the maker, baker or manufacturer, and required every maker, baker, manufacturer or seller of bread to keep scales and weights suitable for weighing bread in a conspicuous place, and to weigh in the buyer's presence, when requested, the loaf or loaves of bread sold or offered for sale. In *People* v. *Freeman,* 242 Ill. 373, a statute was held valid which prohibited the coloring of imitation butter to make it resemble genuine butter, though the coloring matter used might be harmless and its use in genuine butter not prohibited. The ordinances and the statute involved in these cases were of no benefit to the dealers, except as they protected the honest dealers from the unfair competition of dishonest persons engaged in the same business.

It is contended on behalf of the appellant that the ordinance is, in effect, the same as a requirement that the appellant and other milk dealers shall pay for deputy health inspectors of the city for the purpose of detecting violations of the ordinance, and that this police duty is a purely public burden, which cannot be cast upon the individuals who happen to be engaged in the business concerned. The case of *City of Chicago* v. *Weber,* 246 Ill. 304, is cited in support of this argument. In that case an ordinance required all persons conducting theaters to employ firemen to be detailed by the fire marshal of the city from the regular city fire department and to pay for their services. It was required that a fireman should be present at each performance, in the uniform of the fire department, should report to the fire marshal and be subject to his orders, and should see that the exit doors were unlocked, the fire apparatus in

263 — 9

proper condition and all the appliances in working order. It was held that the city had no power to require theater owners to employ and pay a city fireman to be present at each performance, and it was stated that the principle involved was the same as in *Gridley* v. *City of Bloomington,* 88 Ill. 554, and *City of Chicago* v. *O'Brien,* 111 id. 532, where it was held that the burden of keeping sidewalks free from obstructions by snow could not be laid upon the private owners of adjoining property, and *Village of Lemont* v. *Jenks,* 197 Ill. 363, where a charge upon improved lots as compensation for the benefits of increased fire protection, in addition to the regular water rates, was held unauthorized by law. The principle has no application to this case, which relates to the supervision, by law, of a business directly concerning the public health. There is no article of food in more general use than milk; none whose impurity or unwholesomeness may more quickly, more widely and more seriously affect the health of those who use it. The regulation of its sale is an imperative duty which has been universally recognized. This regulation in minute detail is essential, and extends from the health and keeping of the cows which produce the milk, through all the processes of transportation, preservation and delivery to the consumer. Not only may laws and ordinances require that milk offered for sale shall be pure, wholesome and free from the bacilli of any disease, but they may and do, in order to produce this result, prescribe the manner in which such purity, wholesomeness and freedom from disease shall be secured and made to appear. The cows may be required to be registered with a designated public authority; the dairies to be conducted and managed according to prescribed regulations, and, together with the dairy utensils, subjected to inspection; the receptacles in which milk is contained to be of prescribed character and capacity; the labels to be placed according to fixed regulations and to contain certain required information; the milk to be pre-

pared in the manner, at the times and by the means directed and at all times to be subject to inspection. These may be drastic restrictions upon a private business, but experience and the increasing knowledge of the causes of disease and the agencies of its propagation have demonstrated the necessity of such restrictions to the preservation of the public health. The object of all such restrictions is the preservation of the public health, and as a means to that end the protection of the general public against dishonest vendors of milk. They all impose inconveniences and expense upon the dealers in milk, but they are not on that account unreasonable, unjust or oppressive. Legislatures and city councils, in the exercise of the police power, may prohibit all things hurtful to the health and safety of society even though the prohibition invade the right of liberty or property of an individual. (*Booth* v. *People,* 186 Ill. 43.) Such an enactment must be an appropriate measure for the promotion of the public health, safety or welfare. We cannot say that the requirements complained of in the ordinance under review are not adapted to the object sought or are not reasonable. Statutes or ordinances have been held valid which required a vendor of milk to register his herd of cattle with the live stock board; (*State* v. *Broadbelt,* 89 Md. 565;) which required vendors of milk to furnish, gratuitously, samples of milk for inspection and analysis on application of sanitary inspectors; (*State* v. *Dupaquier,* 46 La. Ann. 577;) which authorized milk inspectors to enter any place where milk is stored and take specimens of the milk whenever the inspectors had reason to believe it was adulterated; (*Commonwealth* v. *Carter,* 132 Mass. 12;) and which prohibited bringing into the city for sale any milk or cream from cows outside the city unless the packages containing it were marked with a stamp, tag or impression bearing the name of the owner of the cow from which such milk was drawn, giving his place of business, city, street and number or other proper address,

and unless the owner of such cow should file in the office of the commissioner of health a certificate of a duly authorized veterinary surgeon stating that such cow had been tested with tuberculin and found free from tuberculosis or other contagious diseases. *Adams* v. *City of Milwaukee,* 144 Wis. 371; *State* v. *Nelson,* 66 Minn. 166; *Nelson* v. *City of Minneapolis,* 112 id. 16.

The appellant insists that the recording device is impracticable; that the record can be made by using water and heating it, without any milk; that the pointer can be manipulated to show a temperature different from the actual temperature; that the dial can be taken out and marked by hand, and that the number of dealers and extent of territory covered by them is so great that it would be physically impossible for the officers of the department of health to visit the places where milk is pasteurized and change the dials between the time of each pasteurization and the next. These are questions of judgment and discretion, the determination of which must be left to the legislative department. If the apparatus should not record the temperature accurately at all times or should not indicate the length of time the temperature was maintained, or if it can be manipulated so as not to show an accurate record, these are matters for the city council to consider. Courts cannot overrule the determination by the city council that a particular method of protecting the public health should be adopted unless it is so clearly and manifestly wrong that there can be no doubt about it. A personal inspection of all milk sold in the city would be manifestly a requirement difficult, if not impossible, to carry out. Even though the recording apparatus may be manipulated by a dishonest dealer so as to show an untrue record, the city council may have thought its use better for the protection of the public than a system by which no record was preserved but the health officers were compelled to rely wholly upon the dealer, and we cannot say that they were clearly and un-

mistakably wrong. Whether officers of the health department shall be provided in sufficient number to visit the places where pasteurization takes place between each pasteurization and the next is also a question for the council.

The decree is affirmed.                    *Decree affirmed.*