Economy Dairy Company, Appellant, v. Otto Kerner, Individually and as Attorney General of the State of Illinois, and Albert C. Baxter Individually and as Acting Director of Department of Public Health of the State of Illinois, Appellees.

Gen. No. 9,205.

the February term, 1939.   Heard in this court at Opinion filed January 15, 1940.

GREEN, COSTIGAN & WINES, of Chicago, for appellant.

JOHN E. CASSIDY, Attorney General, for appellees; MONTGOMERY S. WINNING, Assistant Attorney General, of counsel.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

Plaintiff appellant, Economy Dairy Company, a corporation, engaged in the processing and distribution of milk at retail in Cook county, Illinois, filed its complaint for an injunction and mandamus in the circuit court of Sangamon county against Otto Kerner, individually, and as attorney general of the State of Illinois, and Albert C. Baxter, individually, and as acting director of the department of public health of Illinois, as defendants, now appellees herein.

The first count of the complaint sought the issuance of a writ of injunction in equity restraining all civil and criminal prosecutions of the plaintiff for alleged violations of the Pasteurization Act (Ill. Rev. Stat. 1937, ch. 56½, ¶¶ 101 to 114, incl. [Jones Ill. Stats. Ann. 53.087–53.101]). The second count, which is at law, sought the issuance of a writ of mandamus to compel defendant to issue to plaintiff a certificate of approval for its plant under the provisions of said Pasteurization Act. The defendant had previously refused to issue such certificate on the alleged ground that the plaintiff had failed to comply with certain provisions and requirements of said act and of the regulations of the department of public health in effect thereunder. The cause was heard upon complaint and answer and dismissed by the trial court, and an appeal was wrongfully taken to the Supreme Court, which has certified the case to this court for review upon said appeal.

No objection is made by the department of public health to the sale of raw milk in bulk form by the plaintiff pursuant to the requirements of the Pure Food Act, but it is contended that the sale of heated milk processed in such plant under the Pasteurization Act can only be lawfully made to the public in such original sterilized containers in which the milk is placed and sealed within said plant pursuant to the provisions of the statute and rules of the department thereunder and cannot be sold and disposed of at retail in bulk form. It is further contended that the statute expressly prohibits the sale of heated milk in any other form.

Under section 1 of the Pasteurization Act, approved in 1925, as amended in 1935 (being par. 101, chapter 56½, above cited), the various terms of the act are defined. "Pasteurization," "pasteurized" and similar terms are defined as the process of heating every particle of milk or milk products to a temperature of not less than 142 degrees F., and holding it at such tem-

perature for not less than 30 minutes in apparatus approved by the department of public health, or the heating of every particle of milk or milk products to 160 degrees F., and holding it at such temperature or above for not less than 15 seconds. The various milk products are then defined. The definition of "pasteurization plant" given in the above section is as follows:

" 'Pasteurization plant' as used herein shall be taken to include the building, machinery, apparatus, and other equipment and appurtenances necessary and essential in the work of pasteurizing milk or milk products, tanks and other equipment essential to the storing or handling of the milk while being held for pasteurization, the equipment, machinery, apparatus, and appurtenances for cooling the milk and milk products, and placing the milk and milk products in bottles or other suitable containers, and storing such bottles and containers following pasteurization."

Sections 2 and 3 of said act provided for application, inspection and issuance of certificates of approval by the department of public health of plants operated under the provisions of the act. The latter section provided in part as follows:

"No milk or milk products shall be sold or offered for sale with any word or words stating or indicating that the milk or milk products are pasteurized nor shall the owner or operator of a plant or distributor of milk or milk products indicate by any other means that the milk or milk products are pasteurized, until the State Department of Public Health has issued a certificate of approval for the pasteurization plant in which the milk was pasteurized.

"No person, firm, association, institution, partnership or corporation selling, delivering or distributing milk or milk products shall heat milk or milk products or subject milk or milk products to other treatment in an effort to make the milk or milk products safe for human consumption or to preserve its keeping quali-

ties unless such person, firm, association, partnership, institution or corporation shall comply with the provisions of this Act.''

Section 4 provided for the manner of constructing and remodeling such plants. Section 5 provided that the State department of public health shall prepare and have printed the minimum requirements for the construction, equipment, maintenance and operation of pasteurization plants for which certificates of approval will be issued. Section 6 provided for automatic devices for recording pasteurizing temperatures and for charts and records thereof to be dated and filed with the State department of public health upon request therefor.

Section 7 provided that:

''Bottles, cans or other containers in which pasteurized milk or pasteurized milk products are sold, delivered or distributed shall have been washed, rinsed and sterilized by some efficient means approved by the State Department of Public Health. Said containers shall be plainly tagged, capped or labeled with the name and post office address of the pasteurization plant where said milk or milk products are pasteurized.

''All pasteurized milk and milk products shall be delivered to the consumer in the bottles, cans or other containers in which said milk and milk products are placed in the pasteurization plant.''

Said section 7 concluded by defining hotels, restaurants and other public eating places as consumers and provided for the manner of storing and handling pasteurized milk and milk products so as not to expose the same to contamination.

Sections 8 to 14 inclusive provided for inspection of plants, certificates of health of employees, scientific analyses of milk samples by the department, revocation and reinstatement of certificates of approval, penalties for violation of its provisions and exempted from the provisions of the act municipalities of more

than 500,000 inhabitants which maintained such systems of pasteurization and regulation.

The plaintiff company maintains a plant for heating and processing milk in Cook county, Illinois, and operates two retail milk stores, one at 7314 West Irving Park boulevard and the other at 6540 Milwaukee avenue; the plant of the plaintiff being located in rooms to the rear of the first mentioned store. A number of photographs of the rooms, machinery and premises constituting plaintiff's plant and stores appear as exhibits in the record.

The process of heating, bottling, capping and cooling such portion of the milk as was sold to the consumer in the original bottles or containers in which it was so placed in the pasteurization plant appears to have been in accordance with the minimum requirements of the statute and rules prepared and promulgated by the State department of public health thereunder. The plaintiff company sought, however, to store approximately one-third of the milk so heated in ordinary sterilized 10-gallon milk cans, from which the same was at intervals poured into large covered vats in each of the retail stores of the plaintiff, from which vats, pipes and faucets extended through the walls of the cool storage room or compartment into the retail stores where the same was sold to the general public either in paper containers supplied by the clerks of the plaintiff or in miscellaneous containers brought into the store by consumers, which were filled from the faucets and so sold and delivered in bulk or loose form to the consumers.

No printing nor written advertisement concerning the pasteurization of the milk appeared on the bottles or in the stores where the milk and milk products were sold across the counter by the clerks employed therein, but it appears from the evidence that on two occasions, when such inquiry was made, the clerk filled the cus-

tomers' orders by selling milk both in bottles so filled in the plant and in containers brought by the customer and filled from the faucets and stated the same to be pasteurized milk. The president of the company testified that he had instructed the employees not to represent and sell the same as pasteurized milk. On one of the two occasions in question a jug was filled from the faucet through a funnel taken by a woman clerk from beneath the counter and placed in the jug.

It appears that the "bottles, cans or other containers in which pasteurized milk" was so usually sold and delivered in bulk had not been "washed, rinsed and sterilized by some efficient means approved by the State Department of Public Health," and that the pasteurized milk so sold and delivered to the consumer in such bottles, cans or other containers had not been placed therein in said pasteurization plant, but were by such sale and delivery in bulk form, whereby they became "exposed to contamination." All such sales, both in sealed bottles and in bulk form were made without having procured a certificate of approval therefor issued by the State department of public health pursuant to the provisions of the Pasteurization Act, the issuance of which was denied for the reason that the plaintiff sought to sell a portion of its milk so heated and processed in loose or bulk form and subject to contamination in the purchasers' containers not sterilized pursuant to the provisions of the act, thereby exposing the public health to all the dangers sought to be avoided by compliance with the provisions of the act.

Under the provisions of the above act, it became mandatory that new pasteurization plants submit plans to the department and that the plants be approved and certificates of approval issued before pasteurized milk from such plants may be sold or distributed. Pasteurized milk must be delivered to the consumer in the sterilized containers in which it was placed in the pas-

teurization plant and such containers must be tagged, capped or labeled with the name and post office address of the plant where the contents were pasteurized regardless of who the distributor may be. From the evidence of the chemists who testified, it appeared that the bacteria count made from samples of the loose milk was more than double that of the milk sealed in the plant in sterilized containers. The safety and value of pasteurized milk depends not alone upon adequate heating to destroy pathogenic bacteria or disease-inciting organisms, but also in its subsequent freedom from contamination until ready for use by the consumer.

We are disposed to hold that the refusal of the State department of public health to issue its certificate of approval of the above method of processing and selling its products as pasteurized milk unless they discontinued such sale of heated milk in open or bulk form was justified in view of the fact that approximately one-third thereof was being processed and disposed of in open bulk or loose form and not in sterilized and sealed containers.

To the plaintiff's contention that the above restrictions imposed by the health department under the act would tend to work unjust competitive hardship on its business, it may be said that to permit it to process and sell pasteurized unlabeled milk in loose form and in unsterilized and unsealed containers would not only nullify the provisions and purpose of such legislation, but would constitute a discrimination against all processors and dealers who comply with its terms.

The validity of and the necessity for municipal regulations and legislation protecting milk against contamination by bacteria, disease germs or bacilli has long been recognized in this State and is no longer open to serious question. Under municipal ordinances of the city of Chicago making provision for pasteuriza-

tion of milk, the necessity and reason for such provisions was recognized by the Supreme Court in the case of *Koy v. City of Chicago,* 263 Ill. 122, 104 N. E. 1104 (1914), wherein it was said, on pages 130–131: ''There is no article of food in more general use than milk; none whose impurity or unwholesomeness may more quickly, more widely and more seriously affect the health of those who use it. The regulation of its sale is an imperative duty which has been universally recognized. This regulation in minute detail is essential, and extends from the health and keeping of the cows which produce the milk, through all the processes of transportation, preservation and delivery to the consumer. Not only may laws and ordinances require that milk offered for sale shall be pure, wholesome and free from the bacilli of any disease, but they may and do, in order to produce this result, prescribe the manner in which such purity, wholesomeness and freedom from disease shall be secured and made to appear. The cows may be required to be registered with a designated public authority; the dairies to be conducted and managed according to prescribed regulations, and, together with the dairy utensils, subjected to inspection; the receptacles in which milk is contained to be of prescribed character and capacity; the labels to be placed according to fixed regulations and to contain certain required information; the milk to be prepared in the manner, at the times and by the means directed and at all times to be subject to inspection. These may be drastic restrictions upon a private business, but experience and the increasing knowledge of the causes of disease and the agencies of its propagation have demonstrated the necessity of such restrictions to the preservation of the public health.''

In view of the passage of the more recent Act of 1939, repealing the Act of 1925 as amended in 1935 and in effect at the time this suit was instituted, which

latter Act of 1939 regulates the entire subject matter of pasteurization of milk and milk products, and in express language provides in section 8 thereof (Ill. Rev. Stat. 1939, ch. 56½, ¶ 122 [Jones Ill. Stats. Ann. 53.183]) that "All pasteurized milk and milk products shall be placed in their final delivery containers in the plant in which they are pasteurized"; that it shall be unlawful for "hotels, soda fountains, restaurants, grocery stores, milk depots, milk stations and similar establishments to sell or serve any pasteurized milk or milk product except in the original container in which it was placed at the point of pasteurization," except milk products consumed on the premises which may be served from the original container, and further providing that "The sale or distribution of bulk, loose or dipped pasteurized milk or milk which has been heated within the purview of this Act is hereby prohibited," the questions at issue herein, under any valid act so providing, can remain only as academic or moot questions.

Before either a writ of injunction or of mandamus will issue, the right of the plaintiff to such remedies must clearly and affirmatively appear. We hold that in denying a writ of injunction restraining the department from prosecuting any civil or criminal proceedings against the plaintiff for alleged violations of the provisions of the above act and in the denial of a writ of mandamus requiring the department to issue a certificate of approval as a pasteurization plant to the plaintiff under the circumstances in evidence herein, the trial court acted properly and that there is no reversible error in the record.

The decree and judgment of the circuit court of Sangamon county will therefore be affirmed.

*Affirmed.*