**DIXIE DAIRY COMPANY, a corpo-
ration, Plaintiff,**

v.

**CITY OF CHICAGO, a municipal corpo-
ration, et al., Defendants.**

**No. 70 C 3212.**

United States District Court,
N. D. Illinois, E. D.

March 15, 1973.

**1352**

Francis J. McConnell, John Borst, Jr., Richard P. Campbell, of McConnell, Curtis, Mahon & Borst, Chicago, Ill., for plaintiff.

Richard L. Curry, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendants' motion for summary judgment.

This is an action for declaratory judgment and injunctive relief based on the alleged unconstitutionality of a City of Chicago ordinance and the actions of the Chicago Board of Health pursuant to that ordinance. Damages, resulting from loss of revenue and profits, are alleged to substantially exceed $10,000 exclusive of interest and costs.

The plaintiff is the Dixie Dairy Company ("Dixie"), an Illinois corporation engaged in the business of purchasing, distributing and selling Grade A milk and milk products processed at its plant in Gary, Indiana. Dixie is the holder of an Illinois Department of Public Health Permit which authorizes it to distribute Grade A milk and milk products within the state. The defendants are the City of Chicago, the City of Chicago's Board of Health ("Board of Health"), Dr. Murray Brown (the Commissioner of the Board of Health) and the individual members of the Board of Health.

The plaintiff in its amended complaint alleges the following facts: All of plaintiff's fluid milk and milk products have been and are produced, pasteurized and processed under regulations, standards and sanitation requirements provided by the 1965 United States Public Health Service Model Grade A Ordinance and amendment thereto. These provisions have been substantially adopted by statute in the State of Indiana and by regulation in Illinois. Indiana, by statute, and Illinois by regulation provide that Grade A milk and milk products having their source from points beyond the limits of routine inspection may be sold in their respective states when two conditions are satisfied. First, the milk and milk products must be produced and pasteurized under regulations substantially equivalent to those of the receiving state and, second, the shipping processor must have been awarded an acceptable (90% or higher) milk sanitation compliance and enforcement rating made by a state milk sanitation rating officer certified by the United States Public Health Service.[1]

Pursuant to the foregoing regulatory scheme plaintiff applied for and received a permit from the Illinois Department of Public Health for sale and distribution of its Grade A Fluid Milk and milk products within the boundaries of Illinois. Plaintiff's processing plant and most of its milk producers are located at points beyond the limits of routine inspection by the State of Illinois. Thus plaintiff alleges that the Illinois permit was issued on the following basis (1) that plaintiff's milk and milk products were produced and pasteurized under regulations which were and are substantially equivalent to the regulations of the State of Illinois, and (2) that plaintiff has been awarded a 90% or higher milk sanitation compliance and enforcement rating by a State of Indiana milk sanitation rating officer certi-

---

1. Burns' Anno.Indiana Stat. § 35–2581, IC 1971, 16–6–6–11; Art. XI, Rule 11.01,      Grade A Milk and Milk Products Regulation, Illinois Department of Public Health.

fied by the United States Health Service.

Under the Illinois State permit, plaintiff, during the past several years, has sold annually approximately $3,000,000 worth of Grade A Fluid Milk and milk products to food stores and other customers within the State of Illinois. However, plaintiff has not been allowed to sell any of its milk products within the City of Chicago.

The City of Chicago Grade A Milk Ordinance (Municipal Code of Chicago, Chapter 154, "Milk and Milk Products") provides in relevant part:

> 154–8. *Permit To Sell.* It shall be unlawful for any person to bring into or receive into the city, for sale, or to sell or to offer for sale therein . . . any milk or milk product unless such person possess a permit from the board of health. . . .
>
> 154–19. *Products Shipped From Beyond Limits.* Milk and milk products from points beyond the limits of inspection of the city may not be sold in the city unless produced and pasteurized under provisions identical with those of this chapter and approved by the board of health. In order that inspections by the board of health may be adequate, thorough, and effective, the board of health may confine its inspections within such points and territorial limits as the board of health may, from time to time, deem necessary to insure economic and proper supervision, and to safeguard and promote the public health of the city.
>
> 154–22. *Penalty.* Any person violating any provision of this chapter shall be fined not less than five dollars nor more than two hundred dollars for each offense. Each and every day on which the violation of any of the provisions of this chapter occurs · shall

constitute a separate and distinct offense.[2]

The plaintiff alleges that the Chicago Board of Health has interpreted Chapter 154–19 (products shipped from beyond limits of inspection of the city) as applying only in emergency situations (e.g. flood, blizzard or strike). Consequently there is no provision in the existing Chicago milk ordinance for issuance of a permit to an out-of-state processor on the basis of the shipping state's inspection as is provided by Indiana and Illinois in their respective statutes and regulations. Further, as a matter of practice, the Chicago Board of Health refuses to issue a permit on the basis of the shipping state's inspection notwithstanding the fact that the shipping state's sanitary standards and enforcement procedure are allegedly equal to or more rigid than Chicago's. The Chicago Board of Health insists on conducting its own inspection and regulation of the out-of-state processor's sources and processing plant as a mandatory condition to the grant of a permit even though such processor's sources and processing plant are located beyond the city's jurisdictional limits of inspection. The City of Chicago will not grant a permit on the basis of inspection of the finished product within the geographic limits of its inspection authority provided in Chapter 24, § 7–4–1 of the Illinois Revised Statutes.

The plaintiff contends that because of the unconstitutional ordinance and the municipal actions it cannot sell its Grade A milk and milk products within the City of Chicago without submitting to unauthorized, extraterritorial and usurpatory inspection and regulation by the Chicago Board of Health and that any attempt to sell its products without a permit would subject such products to seizure and confiscation.

---

2.  Plaintiff alleges that municipal regulation by health and quarantine ordinances are strictly limited by Illinois statute to the corporate limits of the municipality plus one-half mile. Chapter 24, § 7–4–1 of the Cities and Villages Act provides :

The corporate authorities in all municipalities have jurisdiction in and over all places within one-half mile of the corporate limits for the purpose of enforcing health and quarantine ordinances and regulations.

The plaintiff in its two count complaint claims that the aforementioned actions by the City of Chicago and its Board of Health are unconstitutional. In Count I of the complaint, the plaintiff, Dixie Dairy, alleges that the action of the defendants in failing to issue a permit to out-of-state processors, including plaintiff, except on the basis of defendants' own unauthorized inspection and regulation constitutes and imposes an unreasonable and discriminatory burden on the free flow of interstate commerce in the sale and distribution of fluid milk and milk products. Plaintiff further alleges that defendants' failure to (1) provide either inspection facilities in the City of Chicago or within one-half mile from the city where plaintiff can qualify for a permit, or (2) provide for the issuance of a permit based upon a reasonable non-discriminatory alternative such as a permit issued by the State of Illinois or another inspecting authority creates a trade barrier against out-of-state producers.

In Count II of the amended complaint, plaintiff alleges discriminatory enforcement of the Chicago ordinance. More specifically plaintiff alleges that city inspectors apply arbitrary and unreasonable standards to the inspection of out-of-state plants and processors in violation of the Fourteenth Amendment.

The defendants in support of their motion for summary judgment contend:

(1) There is no genuine issue of material fact necessary to the decision by this Court regarding the amended complaint filed by plaintiff.

(2) The defendants are not in violation of the Interstate Commerce Clause, Article I, Section 8 of the United States Constitution, and as a matter of law, defendants can require inspection to insure compli-

ance with the ordinances of the City of Chicago, the rules and regulations of the Chicago Board of Health, and to verify whether plaintiff is in actual compliance with the United States Public Health Service "Model Grade A Milk Ordinance."

The plaintiff, in opposition to the defendants' motion for summary judgment contends:

(1) The defendants have failed to adequately treat Count II of the complaint.

(2) As to Count I, the law is clear that the actions of the defendants and the Chicago ordinance are an unreasonable burden on interstate commerce and a barrier to interstate trade.

It is the opinion of this Court that neither the requirement that a permit for the sale and distribution of milk and milk products produced by a distant source will issue only after City of Chicago inspectors have examined the milk producers and processors without charge nor the requirement of periodic subsequent inspection is violative of the commerce clause of the United States Constitution or any state statute.

I. *Defendants inspectional requirements pursuant to the City of Chicago ordinance is not violative of the Interstate Commerce Clause of the United States Constitution.*

■■ It is clear that the instant action does not involve the situation wherein Congress has opted to legislatively exercise paramount national power over commerce in order to exclude measures which might otherwise be within the police power of the states. Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939); Dean Milk Co. v. City of Madison, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951).[3]

3. In fact there is no pertinent national regulation by Congress. The United States Public Health Service in 1939 and 1965 made recommendations for a Model Grade A Pasteurized Milk Ordinance. However, this was merely a Model Ordinance suggested by an administrative agency for local government to follow and was not a federal legislative proclamation intended to have the power and force of federal law.

It is obvious that the regulation of milk and milk products which originate from remote areas is in the interest of the safety, health and well-being of local communities. Parker v. Brown, 317 U. S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); H. P. Hood & Sons v. Du Mond, 336 U.S. 525, 69 S.Ct. 657, 93 L. Ed. 865 (1949); Dean Milk Co. v. City of Madison, *supra*.

■ Since Congress has not spoken to the contrary, a state or local government may, under certain conditions, regulate milk even though interstate commerce may be affected. Milk Control Board v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752 (1939); Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935).

■ It is well settled that a municipality may not adopt a regulation not essential for the protection of local health interest which places a discriminatory burden on interstate commerce. Dean Milk v. City of Madison, *supra*. Such regulations would motivate the multiplication of preferential trade areas and other economic retaliation destructive of the very purpose of the Commerce Clause.[4]

The question of law posed by the instant action is whether issuance of a permit for sale and distribution of milk in the City of Chicago predicated on the continuous inspection of distant milk processors and producers without charge or cost to the distributor, processor or producer is violative of the Commerce Clause. The ordinance in question does not subject distant milk producers or distributors to geographic trade barrier or discriminatory fees. While non-essential discriminatory regulations have been declared unconstitutional as violations of the Commerce Clause, Dean Milk v. City of Madison, *supra*; Polar Ice Cream & Creamery Co. v. Andrews, 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389 (1964), the plaintiff has failed to cite and this Court is unaware of any case which would hold that an ordinance or policy similar to the one in question is unconstitutional. In fact, the United States Supreme Court, in giving reasonable and adequate alternatives to an unconstitutional ordinance, gave tacit approval to ordinances similar to the one under consideration in this case.

The Court in Dean Milk Co. v. City of Madison, *supra*, stated:

It appears that reasonable and adequate alternatives are available. If the City of Madison prefers to rely upon its own officials for inspection of distant milk sources, such inspection is readily open to it without hardship for it could charge the actual and reasonable cost of such inspection to the importing producers and processors. (*Id.* 340 U.S. at 354–355, 71 S.Ct. at 298)

The Chicago ordinance and policy in question are even more favorable to interstate commerce because defendants are willing to make such inspection on distant milk sources without any hardship and at no cost to plaintiff. Thus the same procedure for granting a permit to distant milk sources which the plaintiff complains of was considered by the Court in *Dean* as a viable constitutional alternative rather than an unreasonable restraint of trade or violation of the Interstate Commerce Clause.[5] It is

---

4. See Farrad, Recorder of the Federal Convention, Vol. II, p. 308; Vol. III, pp. 478, 547, 548. The Federalist, No. XLII; Curtiss History of the Constitution, Vol. 1, p. 502; Story on the Constitution, § 259.

5. The plaintiff cites Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed. 2d 174 (1970) as supportive of their position that the alternative with the least impact on interstate activities is the method which must be employed. However, the court specifically stated:

Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: *Where the statute regulates even-handedly to ef-*

the opinion of this Court that the ordinance of the City of Chicago which requires inspection of distant milk sources is not unconstitutional and does not violate the Interstate Commerce Clause.

II. *Defendants Inspectional Requirements are not violative of Chapter 24, Section 7–4–1 of the Illinois Revised Statutes.*

■ The plaintiff contends that Chapter 24, § 7–4–1 of the Illinois Revised Statutes imposes a geographical limitation upon inspection by defendants. The statute provides:

> The corporate authorities in all municipalities have jurisdiction in and over all places within one-half mile of the corporate limits for the purpose of enforcing health and quarantine ordinances and regulations.

The plaintiff's reliance on the Illinois statute to support their position is misplaced. The purpose of the inspection of distant milk sources by the City's Board of Health is not to regulate the distant milk source but to prevent the sale and distribution in Chicago of milk and milk products which might pose a danger to the health and welfare of the citizens of the City of Chicago. It is impossible for the city to inspect every carton of milk sold or distributed in the City of Chicago. It was the City of Chicago and its Board of Health's determination that the best means of assuring the distribution and sale of wholesome milk and milk products within the City of Chicago short of the tedious and impossible task of inspecting every carton is to inspect the source of the milk and the condition of the milk processing plant. The inspection of distant milk sources does not violate Chapter 24, § 7–4–1 because the city is not attempting to regulate the distant place of processing but rather the sale and distribution in Chicago. If the inspection of a processing plant or milk source more than a half mile from the City of Chicago discloses a reason for preventing the sale or distribution of milk or milk products within Chicago from such a plant, the city has no power to compel any change in the distant facility or to impose any fine or other penalty for failure to comply with its standards.

■■ It is undisputed that a municipality has the power to prevent the sale or distribution of milk to its people which can endanger their health and welfare. The inspection of distant milk sources, putatively the most feasible manner of inspecting milk coming into the city, is not an exercise of jurisdiction over the *place* (a distant milk source) but rather it is an exercise of jurisdiction over the sale and distribution of a potentially harmful product when it reaches the City of Chicago.

■ The plaintiff contends that the defendants should be required to issue a permit under the reciprocity provision of the State of Illinois' Chapter 56½ § 214.01 of the Illinois Revised Statutes, which allows the issuance of a permit to out-of-state milk sources who have passed similar sister state inspection.[6] But Chapter 56½ § 214.01, contrary to the plaintiff's contention, has never been interpreted to state that a local government must relinquish its local police

---

*fectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits* (Emphasis supplied).

In the instant action the burden on interstate commerce is clearly not excessive in relation to the need for a local government to protect their milk consumers from foreign contamination.

6. Chapter 56½, § 214.01 provides:
    Grade A raw milk, Grade A raw milk products, Grade A pasteurized milk, and Grade A pasteurized milk products from outside the State of Illinois shall not be sold in the State of Illinois, unless produced and/or pasteurized under provisions which are substantially equivalent to the requirements of this Act, and which are enforced with equal effectiveness as determined by a milk sanitation rating reported by the State Health Authority of the state of origin.

power and grant permits to distant milk sources on the basis of reciprocity.

In fact, the Illinois Food and Drug Act, Sec. 220, specifically states that local governmental bodies shall not relinquish any local police power. Section 220 provides in relevant part:

> Nothing in this Act shall impair or abridge the power of any county, city, village, or incorporated town to regulate the production, handling, storage, distribution, sale, or delivery of milk or milk products, provided the minimum requirements under this Act are observed.

The plaintiff cites a few Illinois cases in support of its position. See City of Rockford v. Hey, 366 Ill. 526, 9 N.E.2d 317 (1937); Higgins v. City of Galesburg, 401 Ill. 87, 81 N.E.2d 520 (1948); Dean Milk Company v. The City of Waukegan, 403 Ill. 597, 87 N.E.2d 751 (1949); Dean Milk Co. v. City of Aurora, 404 Ill. 331, 88 N.E.2d 827 (1949); and Dean Milk Co. v. City of Elgin, 405 Ill. 204, 90 N.E.2d 112 (1950). However, these cases are all distinguishable from the case at bar in that they deal with municipal ordinances which geographically restrict sale to only milk from the local municipal area or which attempt to regulate the distant milk source.[7] In fact, all the Illinois cases cited by the plaintiff came before the United States Supreme Court Decision of Dean Milk Co. v. City of Madison, *supra*. The U. S. Supreme Court in *Dean*, while condemning restrictive trade barriers similar to those previously prohibited by the Illinois cases, specifically approved of an inspection program similar to that utilized by the City of Chicago as a reasonable constitutional alternative for local control of milk being sold within the city. Further, it is a fact of life in our society that even when dairies are within a city or ½ mile outside the city, the farms supplying them with milk are to be found at far greater distances. Thus, a legal doctrine which would preclude inspection of the source of milk would for all practical purposes destroy the cities' power and ability granted by Chapter 56½ § 220 of the Illinois Revised Statutes and could seriously impair the health, safety and welfare of its citizens.

The Illinois Supreme Court has long expounded the importance, necessity and responsibility of the City of Chicago for regulation and inspection of milk and milk products. That Court has aptly stated that the protection of public health through local regulation and inspection of milk products outweighs the burden placed on private enterprise. As the Illinois Supreme Court, in Koy v. City of Chicago, 263 Ill. 122, 104 N.E. 1104 (1914), stated:

> There is no article of food in more general use than milk; none whose impurity or unwholesomeness may more quickly, more widely and more seriously affect the health of those who use it. The regulation of its sale is an imperative duty which has been universally recognized. This regulation in minute detail is essential, and extends from the health and keeping of the cows which produce the milk,

---

7. The instant action is clearly distinguishable from the following cases: City of Rockford v. Hey, *supra*, which involved a license fee and an unlawful delegation of authority to the Commissioner of Health; Higgins v. City of Galesburg, *supra*, involved a license fee for distant sources and geographic restriction on the source of some milk products; Dean Milk Co. v. City of Waukegan, *supra*, involved a geographic restriction of only milk produced and pasteurized in Lake County, Illinois being sold in Waukegan; Dean Milk Co. v. City of Aurora, *supra*, involved a limiting of milk inspection to 25 miles from the city limits, and an unlawful delegation of authority; Dean Milk Co. v. City of Elgin, *supra*, involved license and inspection fee plus prohibition and penalties for violation. Unlike the instant action, all these cases involved a factual situation wherein the municipality was attempting to regulate a distant milk source *in loco*.

through all the processes of transportation, preservation, and delivery to the consumer. Not only may laws and ordinances require that milk offered for sale shall be pure, wholesome, and free from bacilli of any disease, but they may and do, in order to produce this result, prescribe the manner in which such purity, wholesomeness, and freedom from disease shall be secured and made to appear. The cows may be required to be registered with a designated public authority; the dairies to be conducted and managed according to prescribed regulations, and, together with the dairy utensils, subjected to inspection; the receptacles in which milk is contained to be of prescribed character and capacity; the labels to be placed according to fixed regulations, and to contain certain required information; the milk to be prepared in the manner, at the times, and by the means directed and at all times to be subject to inspection. These may be drastic restrictions upon a private business, but experience and the increasing knowledge of the causes of disease and the agencies of its propagation have demonstrated the necessity of such restrictions to the preservation of the public health. *Id.* at 130–131, 104 N.E. at 1107.

Thus, it is the opinion of this Court that the City of Chicago's ordinance and policy of inspection of distant milk sources does not violate the letter and spirit of the Illinois law.

It is clear from the above discussion that there is no Interstate Commerce Clause violation involved in the City of Chicago's ordinance and policy of inspection of distant milk sources. Thus, it is equally clear that summary judgment in favor of the defendants as to Count I should be granted.

III. *Summary Judgment as to Count II of the amended complaint cannot be granted.*

■ Count II of the amended complaint alleges discriminatory enforcement of the Chicago ordinance in that city milk inspectors apply arbitrary and unreasonable standards to the inspection of out-of-state plants and processors in violation of the Fourteenth Amendment. While both sides extensively briefed the Commerce Clause question (Count I of the complaint), both sides, in their memoranda for summary judgment, have lightly treated Count II and the due process and equal protection claim. The Court, after examining the amended complaint, memoranda and depositions submitted by both sides, is of the opinion that there presently exists issues of genuine fact which precludes summary judgment at this time as to Count II of the complaint.

Contrary to the contention of the defendants, the question of due process and equal protection presented in Count II of the amended complaint raises a constitutional question which is proper for this Court to decide. See Southeast Milk Sales Association, Inc. v. Swaringer, 290 F.Supp. 292 (M.D.North Carolina, 1968).

Thus, it is this Court's opinion that the Chicago ordinance and policy of inspection of distant milk sources does not violate the Interstate Commerce Clause and that there is a genuine issue of material fact as to Count II of the amended complaint alleging discriminatory enforcement of the Chicago ordinance in violation of the due process and equal protection clauses.

Accordingly, it is hereby ordered that summary judgment is granted in favor of the defendants as to Count I and summary judgment as to Count II is denied.